UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID CAICEDO, RAJIB
CHOWDURY, and FLORIDA
RISING TOGETHER, INC.,

      *Plaintiffs,*

v.                                          Case No. 6:23-cv-02303-JSS-RMN

RON DESANTIS, *in his official and
individual capacity as Governor of the State
of Florida*,

      *Defendant.*

_____/

## GOVERNOR DESANTIS'S MOTION TO DISMISS AMENDED COMPLAINT

Governor DeSantis, in his official capacity as Governor of the State of Florida, moves to dismiss Plaintiffs' Amended Complaint (DE 54) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of jurisdiction and failure to state a claim. In support, the Governor states:

## BACKGROUND

On August 9, 2023, Governor Ron DeSantis issued Executive Order 23-160 ("Executive Order") suspending Monique Worrell as State Attorney for the Ninth Judicial Circuit for neglect of duty and incompetence. On November 30, 2023, two individual residents of Orlando, Florida, and one partisan advocacy group, filed this action for injunctive and declaratory relief alleging the Executive Order violated their

Fourteenth Amendment right to due process and First Amendment rights to free association and political expression. DE 1.

Governor DeSantis moved to dismiss the initial Complaint for lack of standing and failure to state a claim. DE 29. After hearing argument and directing the parties to supplement their briefing, the Court dismissed the initial Complaint without prejudice for lack of standing ("Order"). DE 51.

## ARGUMENT

Plaintiffs amended the initial Complaint to address the fatal flaws described in the Court's Order. They have failed. Plaintiffs still cannot identify a legally cognizable interest in Ms. Worrell remaining in office or a particularized Article III injury from the suspension, the organizational plaintiff does not sufficiently allege diversion of resources, and the Amended Complaint again fails to state a claim under the First and Fourteenth Amendments. In addition, sovereign immunity bars Plaintiffs' state law claims disguised as federal law claims, and qualified immunity bars Plaintiffs' claims against the Governor in his individual capacity.[1] For each of those reasons, the Court should dismiss the Amended Complaint – this time, with prejudice.

### I.    Plaintiffs Lack Article III Standing.

Federal courts resolve cases or controversies. Art. III, § 2, U.S. Const. "Absent a justiciable case or controversy between interested parties," courts lack the "power to declare the law." *Wood v. Raffensperger*, 981 F.3d 1307, 1313 (11th Cir. 2020) (quoting

---

[1] Governor DeSantis also incorporates by reference his supplemental briefing addressing whether federal courts have the equitable power to reinstate suspended state officials. DE 49.

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). "To have a case or controversy, a litigant must establish that he has standing, which requires proof of three elements," namely "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (internal quotations and citations omitted).

1. <u>The Individual Plaintiffs do not allege an Article III injury.</u>

To establish an injury in fact, plaintiffs must demonstrate that they suffered "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) 'actual or imminent, not conjectural or hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (internal citations omitted). "No legally cognizable injury arises unless an interest is protected by statute or otherwise." *Cox Cable Commc'ns, Inc. v. United States*, 992 F.2d 1178, 1182 (11th Cir. 1993). An injury is particularized when it "affect[s] the plaintiff in a personal and individual way." *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1113 (11th Cir. 2021) (quoting *Lujan*, 504 U.S. at 560). The Amended Complaint, like the initial Complaint, does not allege an Article III injury because it neither establishes that Plaintiffs suffered a legally cognizable injury, nor explains how their injuries were particularized to them.

**A. Legally cognizable injury**

The Court's Order explained that the Complaint did not identify a legally cognizable injury twice over. First, Plaintiffs alleged that suspending Ms. Worrell "disenfranchised the voters who elected her," "abrogated Plaintiffs' associational and

3

expressional First Amendment rights," and violated Plaintiffs' substantive due process right to a fair election. Order at 5-6. But for this to be true, Plaintiffs would have to possess a right to see Ms. Worrell serve her entire term in office. The Court concluded that Plaintiffs had no such right. *Id.* at 6. Second, the Court determined that, to the extent Plaintiffs had any injuries, they were "largely derivative of Ms. Worrell's own injury in being removed before the conclusion of her term for alleged partisan reasons." *Id.* And it noted that "courts have routinely concluded 'that a voter fails to present an injury-in-fact when the alleged harm is abstract and widely shared or is only derivative of a harm experienced by a candidate.'" *Id.* (quoting *Wilding v. DNC Servs. Corp.*, No. 16-61511-CIV, 2017 WL 6345492, at *5–6 (S.D. Fla. Aug. 25, 2017), *aff'd and remanded,* 941 F.3d 1116 (11th Cir. 2019) (collecting cases)). The Amended Complaint suffers from the same fatal flaws.

In the voting context, "[t]he Supreme Court has long recognized that . . . voters who allege facts showing disadvantage to themselves as individuals have standing to sue as they have alleged a concrete and particularized injury." *Ga. Ass'n of Latino Elected Offs., Inc. (GALEO) v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1114 (11th Cir. 2022) (quoting *Gill v. Whitford*, 585 U.S. 48, 65–66 (2018)) (internal quotations omitted). The Amended Complaint, however, does not allege that the Governor's suspension of Ms. Worrell prevented Plaintiffs from voting for Ms. Worrell, expressing their support for her, or associating with Ms. Worrell or her supporters. In fact, Plaintiffs acknowledge that "David Caicedo and Rajib Chowdhury each cast their ballots in support of Worrell and her reforms," Am. Compl. ¶ 4, and

4

"Florida Rising's members include residents of Orange and Osceola counties who voted for Ms. Worrell during the November 2020 election," *id.* ¶ 17. In addition, the Amended Complaint alleges that "[Plaintiffs Caicedo and Chowdhury] banded together with other voters to promote the candidate – here, Ms. Worrell – that best espoused their political views," *id.* ¶ 85, and "engaged in political expression when they voted for Ms. Worrell . . . [to] send[] a message that they supported Ms. Worrell and reform of the criminal legal system in the Ninth Judicial Circuit," *id.* ¶ 86. And it notes that "Florida Rising announced its endorsement on social media, encouraged supporters to vote for her, and began field work to support her candidacy." *Id.* ¶ 32.

Notwithstanding these admissions, the Amended Complaint alleges that suspending Ms. Worrell "deprived the Plaintiffs . . . of their fundamental right to an effective vote," *id.* ¶ 112, "infringed on the right of voters to express their preferences and associate with one another in support of a candidate," *id.* ¶ 1, and "undermined the fundamental fairness and integrity of the electoral process," *id.* ¶ 111. But, again, for this to be true, Plaintiffs would have to possess a right to see their preferred candidate serve his or her entire term. Without such a right, the suspension would not harm Plaintiffs because they freely admit they voted for Ms. Worrell, expressed their support for her, and associated with others in doing so. Plaintiffs, however, cannot cite a single authority suggesting they have a legally protectable interest in Ms. Worrell remaining in office. In fact, as this Court recognized in its Order, they don't. Order at 7; *see, e.g.*, *McGraw v. Banko*, No. 22-12987, 2023 WL 7039511, at *2 (11th Cir. Oct. 26, 2023) ("Put differently, voters exercised their right to vote. But they elected

5

someone who another state official determined was ineligible to hold the position under state law. We cannot say that the Governor's actions violated a clearly established constitutional right such that he may be held liable for damages.").

Moreover, Plaintiffs claim that "Governor DeSantis targeted Ms. Worrell for following through on the promises she had made to the voters who had elected her," Am. Compl. ¶ 53, and "articulated pretextual reasons for setting aside the result of a fair and free election, an election overwhelmingly carried by Ms. Worrell," *id.* ¶ 129, without "identify[ing] a single instance of abuse of prosecutorial discretion, malfeasance, or misconduct," *id.* ¶ 65. But just like those in the initial Complaint, the Amended Complaint's allegations are "derivative of Ms. Worrell's own injury in being removed before the conclusion of her term for alleged partisan reasons." Order at 6. And as the Court noted in the Order, voters do not allege an injury in fact when their injuries are derivative of their chosen candidate. *See Wilding*, 2017 WL 6345492, at *5– 6.[2] Thus, the Amended Complaint still fails to allege a legally cognizable injury.

### B. Particularized injury

The Court's Order also found that the initial Complaint did not allege a particularized injury. In other words, it did not explain how suspending Ms. Worrell "affect[ed] [Plaintiffs] in a personal and individual way." *Sierra*, 996 F.3d at 1113. The Court found that Plaintiffs' allegations "d[id] not distinguish any injury [they] suffered from the nearly 400,000 individuals that voted for Ms. Worrell." Order at 8. It

---

[2] *See also, e.g.*, *Becker v. Fed. Election Comm'n*, 230 F.3d 381, 390 (1st Cir. 2000); *Gottlieb v. FEC*, 143 F.3d 618, 622 (D.C. Cir. 1998).

explained that "'when the asserted harm is . . . shared in substantially equal measure by . . . a large class of citizens,' it is not a particularized injury." *Wood*, 981 F.3d at 1315 (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Accordingly, the Court found that Plaintiffs must provide "[m]ore specific allegations related to [their] claimed injuries . . . to support their standing in this matter." Order at 12.

The Amended Complaint offers more allegations about Mr. Caicedo and Mr. Chowdhury. But those allegations come nowhere close to demonstrating a particularized injury. To be sure, they provide greater detail about Mr. Chowdury and Mr. Caicedo. For example, the Amended Complaint explains that "[t]hroughout Ms. Worrell's campaign, Mr. Caicedo attended various rallies within the Orlando community," Am. Comp. ¶ 34, while "Mr. Chowdhury spent significant time canvassing the Orlando community speaking with constituents about progressive platforms and candidates, including Ms. Worrell," *id.* ¶ 37. It also notes that "Plaintiffs Caicedo and Chowdhury were among the Orange County residents who felt disenfranchised by Worrell's suspension," *id.* ¶ 85, and Mr. Chowdhury, in particular, "was deeply upset by Governor DeSantis's suspension of Ms. Worrell," *id.* ¶ 89.

But the Amended Complaint again does not explain how the suspension affected Mr. Caicedo or Mr. Chowdhury differently than the other 400,000 residents who voted for Ms. Worrell. And a harm shared "in substantially equal measure by all or a large class of citizens . . . does not warrant exercise of jurisdiction." *Wilding*, 2017 WL 6345492, at *5 (quoting *Warth*, 422 U.S. at 499).

In addition, as discussed in Part II, the Amended Complaint alleges that Governor DeSantis "abrogated Plaintiffs' associational and expressional First Amendment rights *when* he abused the suspension authority accorded to him under Florida law." Am. Compl. ¶ 129 (emphasis added). In other words, Plaintiffs claim that Governor DeSantis's alleged violation of the Florida Constitution caused them harm. And they insist the Governor's actions "threaten[] the integrity of the state's democratic system," *id.* ¶ 112, and are "part of a pattern of conduct that has eroded the democratic process," *id.* ¶ 115.

But, as the Court noted when dismissing the Complaint, "[a]n injury to the right 'to require that the government be administered according to the law' is a generalized grievance." Order at 9 (quoting *Wood*, 981 F.3d at 1314). "[A] generalized grievance, 'no matter how sincere,' cannot support standing." *Wood*, 981 F.3d at 1314 Likewise, "the harm done to the general public by corruption of the political process is not a sufficiently concrete, personalized injury to establish standing." *Becker*, 230 F.3d at 389. Thus, for each of these reasons, the Amended Complaint again fails to allege a particularized injury.

2. <u>Plaintiff Florida Rising lacks both associational and organizational standing.</u>

### A. Associational standing

"To establish associational standing, an organization must prove that its members 'would otherwise have standing to sue in their own right.'" *Jacobson*, 974 F.3d at 1249 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528

U.S. 167, 181 (2000)). The organization must make "specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). The Eleventh Circuit has dismissed organizational plaintiffs that "fail[] to allege that a specific member will be injured." *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1203-44 (11th Cir. 2018) ("We did not relax the requirement that an organization name at least one member who can establish an actual or imminent injury.").

The Amended Complaint appears to allege that Florida Rising has associational standing on behalf its members, who are "residents of Orange and Osceola counties who voted for Ms. Worrell during the November 2020 election." Am. Compl. ¶ 17. But Plaintiffs do not identify even one of those members. For that reason, Florida Rising lacks associational standing. *See, e.g.*, *Jacobson*, 974 F.3d at 1249.

The Court did not reach this issue in its Order. Instead, it found that Florida Rising did not have associational standing because its allegations were "insufficient to establish an injury in fact to confer standing" on behalf of its members. Order at 13. As discussed above, the Amended Complaint still fails to allege an injury in fact for all Plaintiffs. Recognizing this, Plaintiffs attempt to spend their way into standing for Florida Rising under a diversion of resources theory. But as the Supreme Court recently made clear, plaintiffs cannot manufacture standing in this way.

### B. Organizational standing

Organizations can have standing "to sue on their own behalf for injuries they sustained." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982). To establish

this organizational standing, the entity must satisfy the same standards for injury in fact, causation, and redressability that apply to individuals. *Id.* at 378-79. In other words, organizations must allege that they suffer "actual present harm" or the "threat of imminent harm." *City of S. Miami v. Governor of Fla.*, 65 F.4th 631, 638 (11th Cir. 2023). Such allegations typically rely on a diversion of resources theory. *Jacobson*, 974 F.3d at 1249-50. Under this theory, an organization suffers actual harm "if the defendant's illegal acts impair [the organization's] ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts." *Id.* at 1250 (quoting *Fla. State Conference of NAACP v. Browning*, 522 F.3d 1153, 1165 (11th Cir. 2008)).

Plaintiffs allege Florida Rising has standing under this theory because it "spent time, funds, and effort on extensive campaigns, outreach programs and educational initiatives to counteract the community impact of the Governor's suspension of Ms. Worrell." Am. Compl. ¶ 13. Specifically, the Amended Complaint alleges that before the suspension, Florida Rising "spent at least 360 hours of staff time in combating and communicating about Governor DeSantis's impending suspension of Ms. Worrell." *Id.* ¶ 76. And "[w]ithin 24 hours of Worrell's suspension, Florida Rising diverted all their resources to host a press conference for their members and the Orlando community," *id.* ¶ 80, and "joined forces with other community groups to poll concerned citizens, asking questions such as, 'How does this affect you?' and 'What should next steps be?'," *id.* ¶ 78.

The Supreme Court, however, severely curtailed the scope of this theory in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 393-96 (2024). The Court distinguished *Havens*, which created the diversion of resources theory, to clarify that an organization does not create standing simply by "divert[ing] its resources in response to a defendant's actions." *Alliance for Hippocratic Medicine*, 602 U.S. at 395. Otherwise, "all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies." *Id.* "*Havens* does not support such an expansive theory of standing." *Id.*

Instead, the Court explained that organizations have standing under a diversion of resources theory only if the defendant's actions "directly affected and interfered with [their] core business activities – not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer." *Id.* Here, Plaintiffs do not allege a single fact suggesting that the Governor's suspension interfered with Florida Rising's core business activities. Rather, they attempt to "spend [their] way into standing simply by expending money to gather information and advocate against the [Governor's] action." *Id.* at 394. But as the Court made clear in *Alliance for Hippocratic Medicine*, "[a]n organization cannot manufacture its own standing in that way . . . no matter how longstanding the interest and no matter how qualified the organization." *Id.* at 394 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)).

Last, even under the case law preceding *Alliance for Hippocratic Medicine*, Plaintiff's allegations would not give Florida Rising organizational standing because

they did not allege *from* where it diverted its resources. *See GALEO*, 36 F.4th at 1114 ("[A]n organizational plaintiff must explain where it would have to 'divert resources away *from* in order to spend additional resources on combating' the effects of the defendant's alleged conduct.") (quoting *Jacobson*, 974 F.3d at 1250). Thus, under any diversion of resources theory, Florida Rising lack organizational standing.

## II. Sovereign Immunity Bars Plaintiffs' State Law Claims Disguised As Federal Law Claims.

The Amended Complaint ostensibly asserts that the Executive Order violates the First and Fourteenth Amendments. Am. Compl. ¶¶ 107-131. Not only do these allegations fail to state a claim under those provisions (as discussed in Part III), but the gravamen of Plaintiffs' claims is that the Executive Order is invalid because it violated the Governor's suspension power under Article IV, section 7(a) of the Florida Constitution. Sovereign immunity precludes such state law claims dressed up as federal law claims.

Ordinarily, a state may not be sued without its consent. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). The Supreme Court has recognized a limited exception permitting suits that challenge the constitutionality of a state official's action and seek prospective relief. *Id.* at 102–03 (citing *Ex Parte Young*, 209 U.S. 123 (1908)).

This *Ex Parte Young* exception does not, however, permit suits that challenge a state official's non-compliance with *state* law. *Id.* at 106. Because suits attempting to compel state officials to comply with state law do not "vindicate the supreme authority

of federal law," the "entire basis" for the *Ex Parte Young* exception "disappears." *Id*.
Indeed, "it is difficult to think of a greater intrusion on state sovereignty than when a
federal court instructs state officials on how to conform their conduct to state law." *Id*.
This limitation on the *Ex Parte Young* exception is called the *Pennhurst* doctrine.

Federal courts are vigilant to detect and thwart attempts to circumvent the
*Pennhurst* doctrine. When a complaint attempts to disguise or repackage a violation of
state law as a violation of federal law, the *Pennhurst* doctrine bars the claim. *Balsam v.
Sec'y of N.J.*, 607 F. App'x 177, 183 (3d Cir. 2015) ("Appellants' attempt to tie their
state law claims into their federal claims is unpersuasive."); *Massey v. Coon*, 865 F.2d
264, 1989 WL 884, at *2 (9th Cir. 1989) (unpublished table decision) ("Although on
its face the complaint states a claim under the due process and equal protection clauses
of the Constitution, these constitutional claims are entirely based on the failure of
defendants to conform to state law."). The gravamen of the claim, not its label,
determines whether *Pennhurst* applies.

For example, in *S&M Brands*, *Inc. v. Georgia ex rel. Carr*, 925 F.3d 1198 (11th Cir.
2019), the plaintiff alleged that Georgia violated a state statute requiring the release of
escrowed funds and that its refusal to release the funds constituted a taking under the
Fifth Amendment and a violation of the First Amendment. *Id*. at 1205. The Eleventh
Circuit looked to the "gravamen" of the plaintiff's complaint, however, and
determined that state law established the obligation to release funds and the amount
to be released. *Id*. Because the "gravamen" of the claim was that "the State has

13

improperly interpreted and failed to adhere to a state statute," the *Pennhurst* doctrine barred the claim. *Id*. (quoting *DeKalb Cnty. Sch. Dist. v. Schrenko*, 109 F.3d 680, 688 (11th Cir. 1997)).

The same is true here. Plaintiffs' claims, although clothed in constitutional terms, allege violations of Florida law. Plaintiffs allege that the Governor "abrogated Plaintiffs' associational and expressional First Amendment rights *when* he abused the suspension authority accorded to him under Florida law." Am. Compl. ¶ 129 (emphasis added). Specifically, Plaintiffs claim that, although the Executive Order "accused Ms. Worrell of 'incompetence' and 'neglect of duty,' it failed to identify a single instance of abuse of prosecutorial discretion, malfeasance, or misconduct." *Id.* ¶ 65. Instead, they claim the Governor "articulat[ed] pretextual reasons for setting aside the results of a fair and free election," *id.* ¶ 129, to conceal the fact that the Governor "suspended Ms. Worrell because of his hostility toward her ideologically different approach to enforcing the state's criminal laws," *id.* ¶ 9.

As in *S&M Brands*, the Florida Constitution and Supreme Court establish the requirements for suspending state officials. *See* Art. IV, § 7, Fla. Const.; *Warren v. DeSantis*, 365 So. 3d 1137, 1139 (Fla. 2023) ("The [executive order's] allegations need only 'bear some reasonable relation to the charge made against the officer.'") (quoting *Israel v. DeSantis*, 269 So. 3d 491, 495 (Fla. 2019)). While Plaintiffs invoke the First and Fourteenth Amendments, the gravamen of their claims allege violations of state law. Here, as in *S&M Brands*, "conclusory allegations that the same conduct that

14

violates state law also violates the U.S. Constitution will not boost the claim over the sovereign-immunity bar." 925 F.3d at 1204. Thus, consistent with *S&M Brands*, this Court should guard against circumventions of *Pennhurst*, safeguard the limits that sovereign immunity places on this Court's jurisdiction, and dismiss Plaintiffs' *de facto* state law claims.

**III.   The Amended Complaint Still Fails To State A Cause Of Action.**

The Court's Order did not address the substance of the initial Complaint's two counts for lack of jurisdiction. It need not do so here, either, for the same reasons. But if the Court finds standing and determines that the Amended Complaint alleges federal law – rather than state law – violations, the Amended Complaint must still be dismissed because its two counts again fail to state a claim under the First and Fourteenth Amendments.

   1. Substantive due process does not prohibit suspending state officials under state law.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." Amend. XIV, § 1, U.S. Const. The Supreme Court has explained that the provision guarantees both procedural and substantive due process. *Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205, 1219 (11th Cir. 2023). The latter component protects rights that "are fundamental, that is, rights that are implicit in the concept of ordered liberty." *McKinney v. Pate,* 20 F.3d 1550, 1556 (11th Cir. 1994) (quotations omitted). Thus, to determine whether a right at issue is one of the substantive rights guaranteed by the

15

Due Process Clause, courts look to "whether the right is 'deeply rooted in [our] history and tradition' and 'essential to this Nation's scheme of ordered liberty.'" *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 216 (2022) (quoting *Timbs v. Indiana*, 586 U.S. 146, 150 (2019)).

Plaintiffs allege that Governor DeSantis, by suspending Ms. Worrell for what they feel are "pretextual" reasons, "negated the will of the electorate" that selected Ms. Worrell as the State Attorney for the Ninth Judicial Circuit. Am. Compl. ¶ 114 ("The Governor's words, including his stated explanation for suspending Ms. Worrell, and his actions . . . demonstrate that he intended to negate the will of the electorate."). They claim his "intentional nullification of election results has undermined the fundamental fairness and integrity of the electoral process," *id.* ¶ 111 and "threatens the integrity of the state's democratic system," *id.* ¶ 112; *see also* ¶ 113 ("Removing an elected prosecutor for political reasons poses an especially acute threat to Florida's democratic practices.").

Plaintiffs insist that the Governor's "nullification" of the 2020 election violated the Fourteenth Amendment because "[a] substantive due process violation occurs when persons acting under color of state law seriously undermine the fundamental fairness and integrity of the electoral process." *Id.* ¶ 109. But they recycle the same two cases from the initial Complaint for this proposition. Neither helps their cause. The first, *Duncan v. Poythress*, 657 F.2d 691, 703-04 (5th Cir. 1981), held that public officials violated an electorate's substantive due process rights when they appointed an official to fill a public office where state law required an election. But nowhere does the Fifth

16

Circuit say that suspension of a state elected official that is arguably authorized by state law violates the substantive due process rights of those who voted for the official. Obviously, it does not offend the U.S. Constitution for states to authorize suspending and removing state elected officials for neglect of duty and other misconduct or incapacity.[3] The second case, *Bell v. Southwell*, 376 F.2d 659 (5th Cir. 1967), addresses racial discrimination without even discussing substantive due process.

Plaintiffs also cite *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980), because it allegedly "provide[s] guidance as to whether an election related injury undermines the fundamental fairness and integrity of the electoral process." Am. Compl. ¶ 110. But that case is similarly not relevant. There, a school board candidate brought a § 1983 suit alleging that the board violated his equal protection rights by miscounting the votes and improperly declaring his opponent the winner. Not only did the plaintiff not allege a substantive due process violation, but the Fifth Circuit found no equal protection violation.

Moreover, as discussed, for the Governor's suspension of Ms. Worrell to violate their substantive due process rights, Plaintiffs would have to possess a fundamental right to see their chosen candidate remain in office once elected. But Plaintiffs still cannot cite a single case for this proposition. In fact, both the Northern District of Florida and the Eleventh Circuit have recently held that *Duncan* does not recognize a substantive due process right for public officials to remain in office, much less a right

---

[3] To the extent Plaintiffs contend that the suspension violated state law, their claim is barred by the state's sovereign immunity, as discussed in Part II.

for their voters to see their preferred candidate stay in office. In *McGraw v. Banko*, Governor DeSantis declared a vacancy in a county school board seat because the official was ineligible. Case No. 1:21-cv-163, 2022 WL 19333345 (N.D. Fla. August 12, 2022), *aff'd*, 2023 WL 7039511 (11th Cir. 2023). The plaintiff there invoked *Duncan* to claim that the Governor's executive order declaring her seat vacant violated her substantive due process rights. But the Northern District made clear that *Duncan* does not "speak[] to a substantive-due-process right of an official to remain in office after being elected," 2022 WL 19333345 at *2, while the Eleventh Circuit held that *Duncan* "cannot prove the existence of a clearly established substantive due process right on which she may base her claim," 2023 WL 7039511 at *2. Since *Duncan* does not give public officials a substantive due process right to remain in office once elected, it certainly does not give their voters the right to keep them in office. Because none of the cases Plaintiffs cite recognize this right, and they offer no other authority for the proposition, Plaintiffs fail to state a substantive due process claim.

2. The First Amendment rights to freedom of association and free expression do not guarantee voters that their chosen candidate will remain in office once elected.

Plaintiffs claim "Governor DeSantis abrogated Plaintiffs' associational and expressional First Amendment rights when he abused the suspension authority accorded to him under Florida law." Am. Compl. ¶ 129. Yet, they acknowledge that they "engaged in their right to associate with other like-minded voters and with their preferred candidate," *id.* ¶ 127, and "engaged in both expressive conduct and core political speech," *id.* ¶ 128, when they voted for Ms. Worrell. For both statements to

be true, the First Amendment rights of free association and free expression would have to go beyond protecting the act of voting to guarantee that a voter's chosen candidate will remain in office.

Plaintiffs do not cite a single case suggesting that the First Amendment goes this far. The closest they come is a case saying the First Amendment guarantees an "effective vote." *See Lyman v. Baker*, 954 F.3d 351, 376 (1st Cir. 2020) ("[B]ecause voters express their preferences at the ballot box associational freedom necessarily includes 'the right to cast an effective vote.'") (citation omitted). But a single case from another circuit recognizing a nebulous and undefined right does not grant Plaintiffs the sweeping right(s) they assert. Indeed, case law demonstrates that the right does not exist. *See, e.g.*, *Kuhn v. Thompson*, 304 F. Supp. 2d 1313, 1335 (M.D. Ala. 2004) ("[T]his Court cannot construe Plaintiffs' rights to vote under the Voting Rights Act so broadly as to encompass a right to maintain Moore in public office or resist Moore's removal from office."). Thus, the Amended Complaint also fails to state a First Amendment claim.

## IV.  Qualified Immunity Bars Plaintiffs' Claims Against Governor DeSantis In His Individual Capacity.

The Amended Complaint also seeks compensatory and punitive damages from Governor DeSantis in his individual capacity. Am. Compl. Prayer for Relief (c) and (d). But it cannot – indeed, does not even attempt to – overcome the Governor's qualified immunity.

State officials acting within their discretionary authority enjoy qualified immunity from suits under § 1983 for money damages in their individual capacities. *Smart v. England*, 93 F.4th 1283, 1287-88 (11th Cir. 2024). To invoke qualified immunity, officials must establish "that he or she acted within the scope of [their] discretionary authority when the allegedly wrongful acts occurred." *Hardigree v. Lofton*, 992 F.3d 1216, 1223 (11th Cir. 2021) (quoting *Sims v. Metropolitan Dade Cnty.*, 972 F.2d 1230, 1236 (11th Cir. 1992)). If the official makes that showing, the burden shifts to the plaintiff to plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

**A.** In suspending Ms. Worrell, the Governor plainly acted within his discretionary authority. An officer's discretionary authority encompasses "all actions of [the] governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." *Plowright v. Miami Dade Cnty.*, 102 F.4th 1358, 1363 (11th Cir. 2024) (quoting *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017) (internal quotation marks omitted)). The Governor issued the Executive Order in his role as the State's chief executive and pursuant to Article IV, section 7(a) of the Florida Constitution, which allows the governor to "suspend from office any state officer not subject to impeachment . . . for malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform official duties, or commission of a felony." *See* Executive Order. Indeed, Plaintiffs concede that the Governor issued the suspension "pursuant to Art. IV, § 7(a) of the Florida

[C]onstitution and acted under color of state law at the time of the suspension." Am. Compl. ¶ 19.

**B.** For reasons already explained in Part III, Plaintiffs have failed to allege a violation by Governor DeSantis of any constitutional right – much less a clearly established one. To determine whether a right was clearly established when the defendant officer acted, courts ask "whether the contours of the right were sufficiently clear that every reasonable officer would have understood that what he was doing violates that right." *Acosta v. Miami-Dade Cnty.*, 97 F.4th 1233, 1241 (11th Cir. 2024) (quoting *Prosper v. Martin*, 989 F.3d 1242, 1251 (11th Cir. 2021)). Plaintiffs "bear the burden of showing that the federal rights allegedly violated were clearly established." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996) (citation omitted).

Plaintiffs can demonstrate that a right was clearly established in one of three ways: "(1) case law with indistinguishable facts, (2) a broad statement of principle within the Constitution, statute, or case law, or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021) (internal quotation marks omitted).

As discussed in Part III, Plaintiffs do not – and cannot – identify a single case in the Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida with "indistinguishable facts" establishing that the Governor suspending a state official pursuant to Article IV, section 7(a) of the Florida Constitution violates the officials' First or Fourteenth Amendment rights. This is especially true since it is an open

question in the Eleventh Circuit whether federal courts have the equitable authority to police state officials' suspensions of inferior officers. *See* DE 49.

Because no such case law exists, Plaintiffs "must establish that a general constitutional rule already identified in the decisional law . . . appl[ies] with obvious clarity" to the Governor's Executive Order. *Dukes v. Deaton*, 852 F.3d 1035, 1043 (11th Cir. 2017) (quoting *Hope*, 536 U.S. at 741 (citations omitted)). Again, Plaintiffs point to no such rule – because none exists.

Their last resort is to demonstrate that the Governor's conduct was so egregious that "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law." *Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011) (en banc) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002)). When "properly applied, [this exception] protects all but the plainly incompetent or those who knowingly violate the law." *Al–Kidd*, 563 U.S. at 743 (internal marks and citations omitted). Plaintiffs come nowhere near meeting this narrow exception. They offer no plausible allegations that the Governor is incompetent, knowingly violated the law, or acted so illegally that "every reasonable officer would understand that what he [did] [wa]s unlawful." *Charles v. Johnson*, 18 F.4th 686, 698 (11th Cir. 2021) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotation marks omitted)). Instead, by reciting examples of recent Florida governors suspending elected state officials, including those from other parties, Am. Compl. ¶¶ 99-101, they implicitly acknowledge that the Governor's action was not clearly and flagrantly unlawful and was, at the very least, a reasonable application

of the law. Qualified immunity protects such actions. *See Saucier v. Katz*, 533 U.S. 194, 205 (2001) (noting third exception allows "reasonable mistakes" about the law).

## V. The Amended Complaint Does Not Sufficiently Plead A Claim For Punitive Damages.

Last, the Amended Complaint seeks "punitive damages to all Plaintiffs to deter future unconstitutional action by the Defendant." Am. Compl. Request for Relief at (c). Plaintiffs may recover punitive damages in § 1983 actions against government officials in their individual capacities. *Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027, 1047 (11th Cir. 2008). But only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

The Amended Complaint does not allege a single fact plausibly demonstrating that Governor DeSantis was motivated by an "evil motive" or was "callously indifferent" to Plaintiffs' rights. Instead, they cursorily allege that the Executive Order was an "intentional nullification of election results," Am. Compl. ¶ 111, and that he "intended to negate the will of the electorate," *id.* ¶ 114. But such baseless legal conclusions are not enough, even to defeat a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Thus, even if Plaintiffs could show that they have

standing, overcome sovereign and qualified immunity, and state a claim under the First or Fourteenth Amendments, they cannot not obtain punitive damages.

**VI.    This Court Should Dismiss The Amended Complaint With Prejudice.**

As demonstrated, the Amended Complaint has not cured any of the deficiencies the Court identified in its Order dismissing the initial Complaint. For this reason alone, the Court should dismiss it with prejudice. *See, e.g.*, *Cousins v. Sch. Bd. of Orange Cnty., Fla.*, 687 F. Supp. 3d 1251, 1282 (M.D. Fla. 2023) ("[T]he Court is not required to permit amendment where the plaintiff has already been given an opportunity to cure the deficiencies and has failed to do so.").

In any event, the Court should dismiss with prejudice because future amendment would be futile. *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1162–63 (11th Cir. 2019) ("[T]he District Court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile."). No matter how Plaintiffs amend their complaint, they cannot (1) allege a legally cognizable injury from the suspension, (2) explain how their injuries are unique from the other 400,000 residents that voted for Ms. Worrell, (3) overcome sovereign immunity, or (4) state a claim under the First and Fourteenth Amendments.

<u>CONCLUSION</u>

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

Dated July 26, 2024,          **RON DESANTIS**
*Governor*

/s/ *Nicholas J.P. Meros*
RYAN D. NEWMAN (Fla. Bar #1031451)
*General Counsel*
NICHOLAS J.P. MEROS (Fla. Bar #120270)
*Deputy General Counsel*
MEREDITH L. PARDO (Fla. Bar #1018871)
*Assistant General Counsel*

**EXECUTIVE OFFICE OF THE GOVERNOR**
The Capitol, PL-5
400 S. Monroe Street
Tallahassee, FL 32399
Phone: (850) 717-9310
Ryan.Newman@eog.myflorida.com
Nicholas.Meros@eog.myflorida.com
Meredith.Pardo@eog.myflorida.com

*Counsel for Governor DeSantis*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the CM/ECF filing portal, which provides notice to all parties, on July 26, 2024.

/s/ *Nicholas J.P. Meros*
*Counsel for Governor DeSantis*