UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID CAICEDO, RAJIB
CHOWDHURY, and FLORIDA
RISING TOGETHER, INC.,

      Plaintiffs,

v.                                                            Case No: 6:23-cv-2303-JSS-RMN

RON DESANTIS,

      Defendant.

_____/

## ORDER

Defendant, Governor Ron DeSantis, moves to dismiss the amended complaint filed by Plaintiffs, David Caicedo, Rajib Chowdhury, and Florida Rising Together, Inc., for lack of standing and for failure to state a claim.  (Dkt. 58.)  Plaintiffs oppose the motion.  (Dkt. 65.)  For the reasons outlined below, the court grants the motion, dismisses Mr. Caicedo's and Mr. Chowdhury's claims for lack of standing and Florida Rising's claims for failure to state a claim, and denies Plaintiffs leave to amend.

## FACTS[1]

Plaintiffs claim to have been injured by Defendant's August 9, 2023 removal of State Attorney Monique Worrell.  (Dkt. 54.)  Mr. Caicedo and Mr. Chowdhury are individual residents of Orlando, Florida, who voted for Ms. Worrell in 2020 "because

---

[1] The court "accept[s] the factual allegations of [Plaintiffs' amended] complaint as true and construe[s] them in [Plaintiffs'] favor."  *See Wiand v. ATC Brokers Ltd.*, 96 F.4th 1303, 1306 (11th Cir. 2024).

she represented the ideologies and preferences that they wanted to see in the State Attorney role." (*Id.* ¶¶ 4, 14–15, 39.) Florida Rising is a nonprofit corporation with the mission of "increas[ing] the voting and political power of marginalized communities." (*Id.* ¶ 16.) To accomplish this mission, Florida Rising "actively engages in voter registration, education, engagement, and election protection programming." (*Id.*) "Florida Rising endorsed Ms. Worrell's campaign," (*id.* ¶ 18), and "Florida Rising's members include residents of Orange and Osceola [C]ounties who voted for Ms. Worrell during the November 2020 election," (*id.* ¶ 17).

"[M]any . . . voters who had supported Ms. Worrell," including Mr. Caicedo and Mr. Chowdhury, "understood that" Defendant had removed her "for political and ideological reasons." (*Id.* ¶ 11.) Accordingly, "[m]any voters were discouraged and began to question whether they could affect change through their vote." Mr. Chowdhury, for example, "was deeply upset by" Ms. Worrell's removal. (*Id.* ¶ 89.) "The day after" the removal, he "attended a community protest on the steps of Orlando City Hall to voice his frustrations." (*Id.*) In addition, "Mr. Chowdhury and Mr. Caicedo are concerned that voting for candidates with progressive policies in the future may inevitably lead to" the candidates' removal by Defendant. (*Id.* ¶ 90.) When Defendant announced Ms. Worrell's removal, "[v]oters and Florida Rising members expressed to Florida Rising organizers that they felt as if their votes did not matter and that they were not heard." (*Id.* ¶ 77.) "Florida Rising mobilized and diverted resources to respond to these concerns." (*Id.* ¶ 11.)

"Florida Rising spent time, funds, and effort on extensive campaigns, outreach

programs[,] and educational initiatives to counteract the community impact" of Ms. Worrell's removal.  (*Id.* ¶ 13.)  "In preparation for and in response to" the removal, Florida Rising "diverted resources to encourage and uplift the community and to keep residents updated" about the removal.  (*Id.* ¶ 18.)  "Florida Rising estimates" that "[b]etween March 2023 and September 2023," it "spent at least 360 hours of staff time in combating and communicating about" Ms. Worrell's removal.  (*Id.* ¶ 76.)  Moreover, "[w]ithin [twenty-four] hours of" Ms. Worrell's removal, Florida Rising "diverted all [its] resources to host a press conference for [its] members and the Orlando community."  (*Id.* ¶ 80.)  Florida Rising allegedly continues to "face[] an increased obligation to uplift a community left despondent by the fundamental unfairness and chilling effects of having [votes] nullified."  (*Id.* ¶ 13.)  Thus, it seeks "compensation for ongoing operational demands and resource expenditures."  (*Id.*)

## PROCEDURAL HISTORY

In Plaintiffs' view, Defendant's actions in removing Ms. Worrell for political purposes and replacing her with "his ideological ally" "deprived . . . Plaintiffs, as well as nearly 400,000 similarly situated voters, of their fundamental right to an effective vote," "in violation of rights protected by the First and Fourteenth Amendments."  (*Id.* ¶¶ 12, 74, 112.)  Accordingly, in November 2023, Plaintiffs sued Defendant under 42 U.S.C. § 1983.  (Dkt. 1.)  The initial complaint asserted two counts: Infringement of Voters' Right to Due Process in Violation of the Fourteenth Amendment to the U.S. Constitution (Count One) and Infringement of Voters' Rights to Association and Political Expression in Violation of the First Amendment to the U.S. Constitution

(Count Two). (*Id.* ¶¶ 73–95) As relief, Plaintiffs sought a declaration that Defendant's order removing Ms. Worrell violates the First and Fourteenth Amendments, an injunction requiring Defendant to reinstate Ms. Worrell as State Attorney for the Ninth Judicial Circuit of Florida, and Plaintiffs' legal fees under 42 U.S.C. § 1988. (Dkt. 1 at 21–22.)

Defendant moved to dismiss the initial complaint for lack of standing and for failure to state a claim. (Dkt. 29.) Plaintiffs opposed the motion. (Dkt. 34.) After a hearing on the motion, (*see* Dkt. 48), and supplemental briefing on the redressability requirement of standing, (Dkts. 49 & 50), the court granted the motion and dismissed the initial complaint without prejudice for lack of standing, (Dkt. 51). The court explained that Mr. Caicedo and Mr. Chowdhury did not satisfy the injury-in-fact requirement of standing because they "failed to allege an invasion of a legally protected interest in" Ms. Worrell's removal, (*id.* at 6), and "failed to allege facts to support a particularized injury caused by Defendant's actions aside from being among the 400,000 individuals who voted for Ms. Worrell in 2020," (*id.* at 8). The court further explained that Florida Rising, which proceeded under an associational-standing theory only, did not satisfy the injury-in-fact requirement for the same reasons. (*Id.* at 13.) Plaintiffs were allowed to file an amended complaint. (*Id.* at 15.)

The amended complaint asserts two counts virtually identical to those asserted in the initial complaint, (*see* Dkt. 54 ¶¶ 107–31), and seeks some of the same relief, (*see id.* at 30–31). Like the initial complaint, (Dkt. 1 at 21–22), the amended complaint seeks a declaration that Defendant's order removing Ms. Worrell violates the First and

Fourteenth Amendments, as well as legal fees pursuant to 42 U.S.C. § 1988, (Dkt. 54 at 30–31). However, whereas the initial complaint sought injunctive relief, (Dkt. 1 at 21), the amended complaint seeks punitive damages to deter Defendant from future unconstitutional action and compensatory damages to reimburse Florida Rising for the resources it diverted due to Ms. Worrell's removal, (Dkt. 54 at 30). The amended complaint also adds details about how the removal affected Plaintiffs. (*See id. passim*.) Defendant now moves to dismiss the amended complaint. (Dkt. 58.)

## APPLICABLE STANDARDS

"[S]tanding is a necessary component of [a federal court's] jurisdiction to hear 'cases' and 'controversies' under Article III of the Constitution," and thus must be addressed at the outset. *Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1190 (11th Cir. 2009) (citing *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1169 (11th Cir. 2006)); *accord Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1349 (11th Cir. 2009) ("Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims.") (quoting *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005)). Accordingly, "a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citing *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991)); *accord Wood v. Raffensperger*, 981 F.3d 1307, 1313 (11th Cir. 2020) ("Absent a justiciable case or controversy between interested parties, [the court] lack[s] the 'power

to declare the law.'" (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998))).

The party invoking federal jurisdiction bears the burden of establishing the constitutional requirements for standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To establish standing, the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss," the court presumes "that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)); *accord Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1081 (11th Cir. 2002) ("[A]t the motion to dismiss stage, . . . the [plaintiff] is only required to generally allege a redressable injury caused by the actions of [the defendant] about which it complains.").

In deciding a motion to dismiss for failure to state a claim, a court "accept[s] the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*
"[D]etailed factual allegations" are generally not required, but "[a] pleading that offers
'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action
will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). When analyzing a motion to
dismiss for failure to state a claim, a court typically limits its consideration to the four
corners of the complaint. *See Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir.
2023).

## ANALYSIS

The court considers in turn the topics of standing, failure to state a claim, and
leave to amend.

### 1. Standing

Plaintiffs must satisfy three requirements for Article III standing: injury in fact,
traceability, and redressability. *See Support Working Animals, Inc. v. Governor of Fla.*, 8
F.4th 1198, 1201 (11th Cir. 2021). To demonstrate an injury in fact, Plaintiffs must
establish that they "have suffered, or . . . face an imminent and not merely
hypothetical prospect of suffering, an invasion of a legally protected interest resulting
in a 'concrete and particularized' injury." *Am. C.L. Union*, 557 F.3d at 1190 (quoting
*Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1159 (11th Cir. 2008)). In the
context of voting, "[t]he Supreme Court has long recognized that a person's right to
vote is individual and personal in nature and voters who allege facts showing
disadvantage to themselves as individuals have standing to sue as they have alleged a

concrete and particularized injury." *Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1114 (11th Cir. 2022) (quoting *Gill v. Whitford*, 585 U.S. 48, 65–66 (2018)) (internal quotation marks omitted).  "A plaintiff need not have the franchise wholly denied to suffer injury.  Any concrete, particularized, non-hypothetical injury to a legally protected interest is sufficient." *Common Cause/Ga.*, 554 F.3d at 1351 (quoting *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005)).  However, courts have repeatedly "concluded that a voter fails to present an injury[ ]in[ ]fact when the alleged harm is abstract and widely shared or is only derivative of a harm experienced by a candidate." *Crist v. Comm'n on Presidential Debates*, 262 F.3d 193, 195 (2d Cir. 2001); *accord Berg v. Obama*, 586 F.3d 234, 240 (3d Cir. 2009).

As alleged in the amended complaint, Plaintiffs voted for Ms. Worrell in 2020 and were injured because Defendant's removal of Ms. Worrell "on pretextual grounds . . . effectively disenfranchised" them in addition to "undermin[ing] the fundamental fairness and integrity of the electoral process and infring[ing] on the right of voters to express their preferences and associate with one another in support of a candidate." (Dkt. 54 ¶¶ 1, 12.)  When describing the "nature of the injury in this case," Plaintiffs allege that Defendant's "actions [have] deprived [them], as well as nearly 400,000 similarly situated voters, of their fundamental right to an effective vote and threaten[] the integrity of the state's democratic system." (*Id.* ¶ 112.)  Plaintiffs further allege that Defendant "abrogated Plaintiffs' associational and expressional First Amendment rights when he abused the suspension authority accorded to him under

Florida law" and "set[] aside the results of a fair and free election" for "pretextual reasons." (*Id.* ¶ 129.)   Like "[m]any voters," Plaintiffs "were discouraged" and "frustrat[ed]" by Ms. Worrell's removal and felt "concerned that voting for candidates" with policies contrary to Defendant's could be a pointless endeavor. (*Id.* ¶¶ 11, 77–78, 89–90.)   Florida Rising also claims that it was injured because Ms. Worrell's removal caused it to divert its resources to combat an increase in voter apathy. (*Id.* ¶ 13.)

As the court previously concluded, Mr. Caicedo, Mr. Chowdhury, and Florida Rising's members have failed to allege an invasion of a legally protected interest in Defendant's removal of Ms. Worrell from her position pursuant to the Florida Constitution.  (See Dkt. 51 and the cases cited therein.)  Their injury is derivative of Ms. Worrell's own injury in being removed, *see Crist*, 262 F.3d at 195; *Berg*, 586 F.3d at 240, and as voters who cast successful ballots for her, they do not establish that they had any legally protectable interest in her remaining in office through her term, *cf. McGraw v. Banko*, No. 22-12987, 2023 U.S. App. LEXIS 28503, at *5 (11th Cir. Oct. 26, 2023) (holding that no clearly established constitutional right was violated when "voters exercised their right to vote" but "elected someone who [Defendant] determined was ineligible" for the position).  Further, Mr. Caicedo, Mr. Chowdhury, and Florida Rising's members have failed to allege a particularized injury aside from being among the 400,000 individuals who voted for Ms. Worrell.  Plaintiffs argue that their injury is particularized because Defendant "negat[ed] the effect and natural consequences of the electoral process in which they participated" and "diminish[ed]

their political speech and associational activity in favor of his own and that of his political allies" when he "subvert[ed] an American democratic election" through his removal of Ms. Worrell.   (Dkt. 65 at 8; *accord id.* at 4–6 (characterizing "the constitutional injury" as "a denial of the voter's substantive due process right to a free and fair electoral process and an abridgment of the voter's speech and associational rights, as demonstrated by [the voter's] participation in the electoral process," and showing that the alleged injury is that Defendant "subvert[ed] the democratic process" "for purely ideological and political reasons" when he "nullif[ied] an American election and silenc[ed] the voices of [those] who participated in it").)   This argument highlights that the asserted injury is a generalized grievance, and "a generalized grievance, no matter how sincere, is insufficient to confer standing." *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) (internal quotation marks omitted).   Accordingly, Mr. Caicedo and Mr. Chowdhury lack standing, and Florida Rising lacks associational standing, *see Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1249 (11th Cir. 2020) ("To establish associational standing, an organization must prove that its members would otherwise have standing to sue in their own right." (quotation omitted)).

That said, Florida Rising also asserts organizational standing on a diversion-of-resources theory.   (Dkt. 65 at 10–13.)   The Supreme Court recently made clear that "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024).   However, an organization may have standing under

a diversion-of-resources theory when the defendant's "actions directly affect[] and interfere[] with [the organization]'s core business activities." *Id.* at 395; *accord Ariz. All. for Retired Ams. v. Mayes*, No. 22-16490, 2024 U.S. App. LEXIS 23963, at *31 (9th Cir. Sep. 20, 2024) ("[A] plaintiff group has organizational standing if it can show harm to its 'core business activities' . . . ."). (*See* Dkt. 58 at 11 ("Organizations have standing under a diversion-of-resources theory only if the defendant's actions directly affected and interfered with their core business activities." (cleaned up).) Defendant contends that Florida Rising lacks organizational standing for two reasons. (*Id.* at 9–12.) First, Florida Rising "do[es] not allege a single fact suggesting that [Ms. Worrell's removal] interfered with [its] core business activities." (*Id.* at 11.) Second, Florida Rising fails to plead from where it diverted its resources. (*Id.* at 11–12.) The court disagrees on both points.

First, although the amended complaint does not speak of Florida Rising's operations in terms of "core business activities," it contains enough allegations about Florida Rising for the court to infer what those activities are. (*See* Dkt. 54.) According to the amended complaint, Florida Rising has the mission of "increas[ing] the voting and political power of marginalized communities," is "dedicated to building the political power of historically marginalized communities by organizing multi-racial movements to win elections," has an "obligation to uplift" voters who "question whether they c[an] affect change through their vote," and "engage[s] its constituencies to expand democracy by ensuring that every eligible voter in the state is able to exercise their . . . right to vote." (Dkt. 54 ¶¶ 5, 11, 13, 16, 18.) From these allegations, the court

can reasonably infer that Florida Rising is in the business of organizing members of marginalized communities, facilitating their civic engagement, and encouraging them to vote and to engage in politics in ways likely to increase their influence in society and improve their lives.  It follows that the core activities associated with this business are the programs for "voter registration, education, engagement, and election protection" in which Florida Rising allegedly "actively engages." (*Id.* ¶ 16.)  Plaintiffs maintain that Defendant's removal of Ms. Worrell "directly interfered with" these core business activities by "requir[ing] Florida Rising to develop new ways to engage voters and encourage participation in the electoral process." (Dkt. 65 at 11.)  The amended complaint states that the removal caused many "[v]oters and Florida Rising members" to "fe[el] as if their votes did not matter," (Dkt. 54 ¶ 77), and common sense dictates that voters who think their votes do not matter tend not to vote, engage in politics, or participate in programs like those central to Florida Rising's business.  Thus, the allegations in the amended complaint support that Defendant's removal of Ms. Worrell directly interfered with Florida Rising's core business activities by requiring the organization to overcome an increase in voter apathy.

Second, although Florida Rising does not directly identify from where it diverted its resources, the amended complaint states that to counteract the voter apathy caused by Defendant's conduct, Florida Rising diverted resources to "extensive campaigns, outreach programs[,] and educational initiatives." (*Id.* ¶ 13.)  The amended complaint also states that within twenty-four hours of Ms. Worrell's removal, Florida Rising "diverted all [its] resources to host a press conference for [its]

members and the Orlando community" to "call out" Defendant's conduct. (*Id.* ¶¶ 79–81.)  At this stage of the case, these statements suffice.  *See Ga. Ass'n of Latino Elected Offs.*, 36 F.4th at 1115 (holding that a "broad allegation of diversion of resources is enough at the pleading stage" for the injury-in-fact requirement).  Further, the allegation that usually, Florida Rising "actively engages" in programs for "voter registration, education, engagement, and election protection" and the corresponding inference that these programs require at least some of Florida Rising's resources support that Florida Rising diverted resources from these programs in response to Ms. Worrell's removal. (Dkt. 54 ¶ 16.)  Accordingly, Florida Rising satisfies the injury-in-fact requirement for organizational standing.

The remaining standing "requirements—traceability and redressability—often travel together." *Support Working Animals*, 8 F.4th at 1201.  To satisfy the traceability requirement, Florida Rising "must demonstrate that there is a 'causal connection' between [its] injury and the conduct of which [it] complains—*i.e.*, the injury must be 'fairly traceable' to [D]efendant's challenged actions and not the result of 'the independent action of some third party not before the court.'" *Id.* (quoting *Lujan*, 504 U.S. at 560).  To satisfy the redressability requirement, Florida Rising "must show that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id.* (quoting same).  According to the amended complaint, Defendant's removal of Ms. Worrell caused "[m]any voters . . . to question whether they could affect change through their vote," which in turn led Florida Rising to "divert[] resources to respond to [the voters'] concerns." (Dkt. 54 ¶ 11.)  These

allegations suffice for traceability. *See Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003) ("[E]ven harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes."). As relief, Florida Rising seeks "compensatory damages for the diversion of resources necessitated by Defendant's [allegedly] unconstitutional actions," (Dkt. 54 ¶ 13), as well as declarations, punitive damages, and legal fees, (*id.* at 30–31). These claims suffice for redressability. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) ("[A]n award of compensatory damages would redress [a monetary] injury."); *cf. Hoever v. Marks*, 993 F.3d 1353, 1362 (11th Cir. 2021) ("[N]o Article III standing problem is created solely because punitive damages do not redress a compensable injury."). Although "standing for [declaratory] claims requires a showing of an ongoing or future injury," *Maisonet v. Comm'r, Ala. Dep't of Corr.*, No. 22-10023, 2022 U.S. App. LEXIS 25976, at *5 (11th Cir. Sept. 16, 2022), Florida Rising asserts an ongoing injury, (*see* Dkt. 54 ¶ 13). Accordingly, Florida Rising has organizational standing to sue Defendant under 42 U.S.C. § 1983.

## 2. Failure to State a Claim

"Section 1983 provides a private cause of action against any person who, under color of state law, deprives a person of 'any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Bowles v. DeSantis*, 934 F.3d 1230, 1239 (11th Cir. 2019) (quoting 42 U.S.C. § 1983). Count One asserts that Defendant's removal of Ms. Worrell violated a substantive due process right protected under the

Fourteenth Amendment because the removal "undermined the fundamental fairness and integrity of the electoral process." (Dkt. 54 ¶ 111.) Count Two asserts that the removal amounted to an "abrogat[ion]" of the "associational and expressional First Amendment rights" that voters exercised when they elected Ms. Worrell. (*Id.* ¶¶ 127–29.)

"'The functional structure embodied in the Constitution, the nature of the federal court system[,] and the limitations inherent in the concepts both of limited federal jurisdiction and of the remedy afforded by [section] 1983' operate to restrict federal relief in the state[-]election context." *Curry v. Baker*, 802 F.2d 1302, 1314 (11th Cir. 1986) (quoting *Gamza v. Aguirre*, 619 F.2d 449, 452 (5th Cir. 1980)). "Not every state[-]election dispute . . . leads to possible federal[-]court intervention." *Roe v. Alabama*, 43 F.3d 574, 580. "If the election process itself reaches the point of patent and fundamental unfairness," relief under section 1983 may be "in order," but "[s]uch a situation must go well beyond the ordinary dispute." *Duncan v. Poythress*, 657 F.2d 691, 703 (5th Cir. 1981) (quoting *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978)).

Plaintiffs frame Defendant's conduct as a Fourteenth Amendment violation of the "fundamental right to an effective vote," (Dkt. 54 ¶ 112), arguing that the votes cast for Ms. Worrell were rendered ineffective when Defendant removed her from office before the end of her term. However, the votes cast for Ms. Worrell were effective because Ms. Worrell assumed office after being elected. (*See id.* ¶¶ 6–7.) *See Smith v. Winter*, 717 F.2d 191, 198 (5th Cir. 1983) ("[T]he right to an 'effective' vote refers to the citizen's right to make his voice heard in the electoral process, and not to

the ability to command results in the public office.  That is to say, a vote for a losing candidate is as 'effective' as a vote for a winning candidate, if voting opportunities are equal.  Moreover, a vote for a winning candidate is 'effective' even though that candidate, after becoming an officeholder, might be consistently outvoted or otherwise rendered 'ineffective' in pursuing announced goals of his or her campaign.").  Similarly, although Plaintiffs allege that Defendant abrogated their First Amendment rights when he removed Ms. Worrell, (Dkt. 54 ¶ 129), they also plead that they exercised "their right to associate" and "engaged in . . . expressive conduct and core political speech" when they voted for her, (*id.* ¶¶ 127–28).

Defendant submits that under Plaintiffs' theory of liability, the Fourteenth Amendment would have to confer "a fundamental right to see [a] chosen candidate remain in office once elected," (Dkt. 58 at 17), and the First Amendment would have to "go beyond protecting the act of voting to guarantee that a voter's chosen candidate will remain in office," (*id.* at 19).  The court agrees with Defendant that the Constitution does not support Plaintiffs' theory.  With respect to the Fourteenth Amendment especially, "[t]he Supreme Court has cautioned against judicial expansion of rights to substantive due process 'because guideposts for responsible decision[-]making in this unchartered area are scarce and open[-]ended.'"  *A.W. v. Coweta Cnty. Sch. Dist.*, 110 F.4th 1309, 1317 (11th Cir. 2024) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)); *accord McGraw*, 2023 U.S. App. LEXIS 28503, at *4–5 (observing that "[c]ourts rarely recognize new substantive due process rights" when holding that the plaintiff could not "prove the existence of a clearly

- 16 -

established substantive due process right" because "voters exercised their right to vote" but "elected someone who another state official determined was ineligible to hold the position under state law"). Plaintiffs' theory would lead to the very judicial expansion of substantive due process rights against which the Supreme Court has cautioned. *See A.W.*, 110 F.4th at 1317. Because Florida Rising fails to allege a constitutional violation, it fails to state a claim in Counts One and Two.

In addition, Florida Rising fails to state a claim for all claims brought against Defendant in his individual capacity because Defendant is entitled to qualified immunity. (*See* Dkt. 58 at 19–23.) "Qualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016). "To be eligible for qualified immunity, a government official must first establish that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred." *Id.* If the official makes this showing, the plaintiff can overcome qualified immunity only by demonstrating both that the defendant's conduct violated a constitutional right and that the right was clearly established at the time of the violation. *See Randall v. Scott*, 610 F.3d 701, 715 (11th Cir. 2010). Typically, "binding precedent set forth in the decisions of the Supreme Court, the Eleventh Circuit, or the highest court of the state" (here, the Florida Supreme Court) is necessary for the right "to be clearly established" in the law. *Melton v. Abston*, 841 F.3d 1207, 1221 (11th Cir. 2016). However, "[a] narrow exception to the rule requiring particularized case[]law" applies when an "official's

conduct so obviously violates the [C]onstitution that prior case[]law is unnecessary." *Id.* (quotation omitted).

Plaintiffs concede that Defendant "acted as part of a discretionary government function" when he removed Ms. Worrell, but they contend that even "in the absence of case[]law with indistinguishable facts," the law at the time established with "obvious clarity" that Defendant's conduct was unconstitutional. (Dkt. 65 at 20–23.) Because as explained above, Plaintiffs do not establish a constitutional violation, Defendant is entitled to qualified immunity on the individual-capacity claims. *See Garczynski v. Bradshaw*, 573 F.3d 1158, 1170 (11th Cir. 2009) ("No constitutional violation occurred. Without this element, we need not assess whether the alleged violation was clearly established. Accordingly, the district court correctly afforded the officers qualified immunity . . . ." (citation omitted)).

Defendant is also entitled to qualified immunity because any constitutional violation was not clearly established. "'[O]bvious clarity' cases [are] rare." *Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011). Plaintiffs argue that the obvious-clarity exception applies because "the fundamental right to vote freely for the candidate of one's choice, in a free and fair electoral process," manifestly lies at the heart of the American system of government and because Defendant acted egregiously when he removed Ms. Worrell because the removal "negat[ed]" the election that she had won. (Dkt. 65 at 22.) However, this argument overlooks Plaintiffs' well-pleaded allegations that voters including Plaintiffs successfully voted for Ms. Worrell and that she held office for over two years before she was removed. (Dkt. 54 ¶¶ 4–7, 9.) Plaintiffs' theory

of liability is too novel for Defendant to have "had fair notice that his conduct would violate the Constitution." *See Echols v. Lawton*, 913 F.3d 1313, 1325 (11th Cir. 2019). Accordingly, Defendant is entitled to qualified immunity on the individual-capacity claims.

### 3. Leave to Amend

Plaintiffs, who have been represented by counsel throughout this case, do not mention leave to amend in their response to Defendant's motion, (*see* Dkt. 65), and have not filed a motion to amend. Because "district courts are not required to sua sponte grant counseled plaintiffs leave to amend their complaint in the absence of a request for such relief," *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1132 (11th Cir. 2019), the court denies Plaintiffs leave to amend. *See Wiand v. ATC Brokers Ltd.*, 96 F.4th 1303, 1311–12 (11th Cir. 2024) ("The district court did not abuse it[s] discretion in denying [the plaintiff] leave to amend his complaint a second time because he never properly moved for leave.").

### CONCLUSION

Accordingly:

1. Defendant's motion to dismiss (Dkt. 58) is **GRANTED**.

2. Plaintiffs' amended complaint (Dkt. 54) is **DISMISSED**.

3. Mr. Caicedo's and Mr. Chowdhury's claims are **DISMISSED without prejudice** for lack of standing.

4. Florida Rising's claims are **DISMISSED with prejudice** for failure to state a

claim.

5.  This case is **DISMISSED**.

6.  The Clerk is **DIRECTED** to terminate any pending motions and deadlines and
    to close the case.

    **ORDERED** in Orlando, Florida, on November 8, 2024.

    JULIE S. SNEED<br>UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record